# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JEFFREY KRAHN, | : | |
| Plaintiff, | : | |
| v. | : | Civ. No. 10-140-LPS |
| SCOTT MEIXELL, et al., | : | |
| Defendants. | : | |

## **MEMORANDUM ORDER**

Pending before the Court are Plaintiff's letters/motions for injunctive relief. (D.I. 40, 41, 42, 52, 53, 54, 55) For the reasons given below, the Court will deny Plaintiff's requests.

## I. BACKGROUND

Plaintiff Jeffrey Krahn ("Krahn"), a prisoner housed at the James T. Vaughn Correctional Center ("VCC") in Smyrna, Delaware, filed this lawsuit pursuant to 42 U.S.C. § 1983, alleging excessive force in violation of the Eighth Amendment of the United States Constitution. On June 24, 2011, Krahn filed three letters/motions for injunctive relief (D.I. 40, 41, 42), and on July 6, 2011, he filed four additional letters/motions seeking additional relief (D.I. 52, 53, 54, 55). The Court ordered Defendants to respond to the letters/motions filed on June 24, 201, and they submitted their response along with copies of Krahn's medical records. Defendants ask the Court to deny the motions on the grounds that Krahn has not met the criteria for injunctive relief.

## II. INJUNCTIVE RELIEF

### A. Standard of Review

"A preliminary injunction is an extraordinary remedy that should be granted only if: (1) the plaintiff is likely to succeed on the merits; (2) denial will result in irreparable harm to the plaintiff; (3) granting the injunction will not result in irreparable harm to the defendant; and (4) granting the injunction is in the public interest." *NutraSweet Co. v. Vit-Mar Enters., Inc.*, 176 F.3d 151, 153 (3d Cir. 1999). Because of the intractable problems of prison administration, a request for injunctive relief in the prison context must be viewed with considerable caution. *See Abraham v. Danberg*, 322 F. App'x 169, 170 (3d Cir. Apr. 24, 2009) (unpublished) (citing *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995)).

### B. Discussion

Krahn has been under treatment for mental health conditions for his "whole life." (D.I. 54 at 6) Within the prison system, Krahn was placed on psychiatric close observation ("PCO") status in August 2009. (D.I. 52 at ex. B) On August 20, 2009, the warden vetoed a classification recommendation for lower security, due to an incident between Krahn and "P&P officers." (D.I. 52 at ex. A) Krahn claims this is being held over his head. (D.I. 53)

Krahn contends that probation is in "cahoots" with the VCC staff and is interfering with his mental health issues. His property has been taken and staff assaults are not investigated. (D.I. 41) He seeks injunctive relief for the return of his legal property and a transfer to the Sussex Correctional Institution ("SCI"). (*Id.*)

Krahn's June 24, 2011 motions, written on or near June 23, 2011, state that as of June 19, 2011, he was housed in a "boxcar cell with no access to legal work or paper, pen." (D.I. 40, 42)

2

Krahn explains that C/O Sgt. Gill ("Gill") threatened to kill him on June 21, 2011. (D.I. 53) The threat occurred when Gill shook down Krahn's cell and found a note that stated Krahn did not like "Niggers." (*Id.*) Gill read the letter out loud and all the inmates started screaming that they were going to kill Krahn. (*Id.*) Gill told Krahn that he could have Krahn "touched without his own hands" and "kill him." (*Id.*) Krahn was told that Gill made the statements because Krahn informed mental health that Gill assaulted another inmate. (*Id.*) Krahn screamed for mental health, and mental health placed him on PCO status. (D.I. 40, 42, 53) Krahn asserts that the correctional officers are trying to hinder him and steal his evidence. (D.I. 40, 42)

The June 24, 2011 letter states that Krahn was placed on PCO status on June 19, 2011, after he had a mental breakdown, and is currently housed in "the hole." (D.I. 52) Krahn received a mental health evaluation after Gill found Krahn in a fetal position, crying and huddled under his bed. (D.I. 46 at ex. C) Gill immediately contacted mental health to evaluate Krahn. (*Id.*) Gill denies any interactions with Krahn and denies threatening to kill Krahn. (*Id.*) Krahn presented to a mental health clinician with uncontrollable crying spells and paranoid thoughts. (D.I. 47) Krahn was transferred to PCO status for observation. (*Id.*) Krahn underwent a psychiatric evaluation on June 22, 2011, was discharged from PCO status, and deemed appropriate for general population. (D.I. 47)

A June 30, 2011 letter indicates that Krahn is now housed on the D-tier, Building 18. The property officer returned Krahn's property on June 30, 2011, including legal paper work, but

Krahn would not sign the receipt papers because of an issue over a watch.[1] (D.I. 46 at ex. B, D.I. 53) Because Krahn would not sign the receipt, the property was marked "refused." (D.I. 53)

Krahn further complains that he is receiving inadequate mental health treatment. A mental health log prepared by Krahn indicates, however, that he received regular treatment prior to his placement on PCO status. (D.I. 52 at ex. C) In addition, the record reflects that his mental condition is monitored by staff and that he was psychologically evaluated as recently as June 28, 2011. (D.I. 47) Krahn states that he will not function in the prison setting based on the crime for which he was convicted and any placement in a control unit rather than general prison population violates his right to due process. (D.I. 52)

Warden Perry Phelps ("Warden Phelps") responds that Krahn was placed on PCO status to undergo a suicide risk assessment due to behavior observations that indicated Krahn was at moderate risk for self-harm. (D.I. 46) Inmates on PCO status are not permitted pen and paper while on any level of PCO due to concern for self-harm. (D.I. 46 at ex. A) In addition, bed linens, personal items, plastic bags, and eating utensils are prohibited on PCO status. (*Id.* at exs. A, B) All property was removed for safety reasons.

Given the exhibits submitted to the Court, Krahn has not demonstrated the likelihood of success on the merits. While Krahn seeks a transfer to the SCI, the Delaware Supreme Court has recognized that prison officials have discretion to house inmates at the facilities they choose. *See Walls v. Taylor*, 856 A.2d 1067, 2004 WL 906550 (Del. 2004) (table) (citing *Brathwaite v. State*, No. 169, 2003 (Del. Dec. 29, 2003)). Furthermore, the United States Supreme Court has held

---

[1] Krahn indicates the watch belongs to him, but the property officer, who did not see the watch on Krahn's property list, believed the watch was stolen, and indicated Krahn would be "written up" and sent to "the hole."

that an inmate has no due process right to be incarcerated in a particular institution whether it be inside the state of conviction, or outside that state. *See Olim v. Wakinekona,* 461 U.S. 238, 251(1983).

Exhibits indicate that actions were taken by staff for the safety of Krahn and the safety of others. "[M]aintaining institutional security and preserving internal order and discipline" are the central goals of prison administration. *Bell v. Wolfish,* 441 U.S. 520, 546 (1979). The Court has no authority to dictate Krahn's housing assignment or prison classification, particularly in light of the fact that actions were taken based upon Krahn's mental health status. These determinations are made by prison authorities as part of the administration of the prison.

Krahn also seeks the return of his property that was removed while he was on PCO status due to safety concerns. By Krahn's own admission, the property was returned, but he refused to sign the property slip and the property was marked as refused. Hence, the issue appears to be moot, and certainly provides no basis to find Krahn has shown a likelihood of success on the merits. Further a prisoner's due process claim based on random and unauthorized deprivation of property by a state actor is not actionable under § 1983, whether the deprivation is negligent or intentional, unless there is no adequate post-deprivation remedy available. *See Parratt v. Taylor,* 451 U.S. 527, 542 (1981), *overruled on other grounds by* 474 U.S. 327 (1986); *Hudson v. Palmer,* 468 U.S. 517, 533 (1984). Krahn has available to him the option of filing a common law claim for conversion of property. *See Hudson,* 468 U.S. at 535; *Nicholson v. Carroll,* 390 F. Supp. 2d 429, 435 (D. Del. 2005); *Acierno v. Preit-Rubin, Inc.,* 199 F.R.D. 157 (D. Del. 2001).

Additionally, the record does not support Krahn's claims that he is not being provided appropriate mental health treatment. The record indicates that Krahn's mental health condition is

monitored by the staff. Finally, there is no indication that, at the present time, Krahn is in danger of suffering irreparable harm.

Therefore, the Court will deny the motion.

## III. **CONCLUSION**

NOW, THEREFORE, IT IS HEREBY ORDERED THAT Plaintiff's letters/motions for temporary restraining order and for preliminary injunction (D.I. 40, 41, 42, 52, 53, 54, 55) are DENIED.

Dated: July 14, 2011

UNITED STATES DISTRICT JUDGE