IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JEFFREY KRAHN, | : |
| Plaintiff, | : |
| v. | : Civ. No. 10-140-LPS |
| SCOTT MEIXELL, et al., | : |
| Defendants. | : |

**MEMORANDUM ORDER**

At Wilmington this 13th day of October, 2011, having reviewed the file and considered Plaintiff's pending motions (D.I. 39, 70, 71, 74, 75, 79, 81, 86, 92, 105);

IT IS HEREBY ORDERED that:

1. **Background**. Plaintiff Jeffrey Krahn ("Plaintiff"), an inmate at the James T. Vaughn Correctional Center ("VCC") in Smyrna, Delaware, filed this civil rights action pursuant to 42 U.S.C. § 1983. He appears pro se and has been granted leave to proceed in forma pauperis. (D.I. 9) The Court screened the complaint and amendments and the case proceeds on the pleadings found at Docket Items 1 and 7 with excessive force claims against Defendants Scott Meixell ("Meixell") and Christopher Albence ("Albence"). The Court dismissed the Amended Complaint found at Docket Item 15.

2. **Motion to Stay**. Plaintiff's Motion to Stay is DENIED. (D.I. 39) On March 21, 2011, Plaintiff filed a letter/motion to stay this matter based upon his mental condition. He indicates that he needs assistance to prosecute his case. Since that time, Plaintiff has repeatedly raised the issue of his mental condition. Recently, the Court directed Warden Perry Phelps

("Phelps") to investigate Plaintiff's mental status and a report was provided to the Court on July 21, 2011. More recently, on September 19, 2011, Plaintiff filed a motion for injunctive relief for medical assistance. (D.I. 92) Defendants responded to this motion on October 3, 2011, and submitted a current psychological summary. (D.I. 101, 102, 103) Based upon the report, psychological summary, and Plaintiff's recent filings, the Court sees no need to stay this case.

3. **Motion for Sanctions**. Plaintiff's Motion for Sanctions is DENIED. (D.I. 70) Plaintiff takes exception to the response Defendants filed in opposition to his Motion for Injunctive Relief and moves for Rule 11 sanctions. (D.I. 70) The Motion is frivolous.

4. **Requests for Counsel**. Plaintiff's Requests for Counsel are DENIED without prejudice to renew. (D.I. 71, 75, 79, 81) Plaintiff has previously moved for, and the Court has denied, requests for appointment of counsel. (*See* D.I. 14, 33) Nothing has changed since the Court last denied Plaintiff's request for counsel on February 18, 2011. Moreover, it is evident from Plaintiff's filings that he ably represents himself in this matter.

5. **Motions for Leave to Amend Complaint**. Plaintiff's Motion for Leave to Amend is DENIED as moot. (D.I. 74) Plaintiff moves to amend to add as defendants Delaware State Police Investigator Mark Papili ("Papali"), Delaware Department of Correction Commissioner Carl Danberg ("Danberg"), the Delaware Department of Correction ("DOC"), the Attorney General of the State of Delaware Beau Biden ("Biden"), Delaware Deputy Attorney General Ophelia Waters ("Waters"), the State of Delaware ("State of Delaware"), and Phelps. (D.I. 74) Plaintiff advises the Court in his most recent Motion to Amend (D.I. 86) that all other Defendants in prior amendments "are dismissed due to lack of subject matter."

6. Plaintiff's Notice and Supplemental Pleading construed as a Motion for Leave to File an Amended Complaint is DENIED. (D.I. 86) Pursuant to Fed. R. Civ. P. 15(a), a party may amend its pleading once as a matter of course within 21 days after serving it; or, if the pleading is one to which a responsive pleading is required, within 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier. Otherwise, a party may amend its pleading only with the opposing party's written consent or the court's leave. Rule 15 provides that a court should freely grant leave to amend when justice so requires.

7. The Third Circuit has adopted a liberal approach to the amendment of pleadings in order to ensure that "a particular claim will be decided on the merits rather than on technicalities." *Dole v. Arco Chem. Co.*, 921 F.2d 484, 486-87 (3d Cir. 1990). Amendment, however, is not automatic. *See Dover Steel Co., Inc. v. Hartford Accident and Indem.*, 151 F.R.D. 570, 574 (E.D. Pa. 1993). Leave to amend should be granted absent a showing of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Oran v. Stafford*, 226 F.3d 275, 291 (3d Cir. 2000). Futility of amendment occurs when the complaint, as amended, does not state a claim upon which relief can be granted. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). If the proposed amendment "is frivolous or advances a claim or defense that is legally insufficient on its face, the court may deny leave to amend." *Harrison Beverage Co. v. Dribeck Importers, Inc.*, 133 F.R.D. 463, 468 (D.N.J. 1990).

8. Here, there is futility of amendment. Plaintiff's proposed amendment seeks to reinstate Phelps as a defendant. Phelps was originally named as a defendant and was dismissed by reason of respondeat superior. (*See* D.I. 18) Plaintiff indicates that he wishes to raise a claim against Phelps for conspiracy to retaliate, but the proposed amendment does not allege conspiracy. Rather, the proposed amendment alleges violations of Plaintiff's right to due process as a result of his placement in isolation. In addition, Plaintiff seeks to add claims that he has been deprived of rehabilitation, employment, and education.

9. With regard to the proposed conspiracy claim, the proposed amendment contains legal conclusions without supporting facts, in derogation of the pleadings requirements of *Iqbal* and *Twombly*. *See Ashcroft v. Iqbal*, __U.S.__, 129 S.Ct. 1937 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). As to the proposed due process claim, in reviewing an alleged due process violation, it must be determined whether the alleged violation implicates a constitutionally protected property or liberty interest. *See Sandin v. Conner*, 515 U.S. 472 (1995). "Liberty interests protected by the Fourteenth Amendment may arise from two sources – the Due Process Clause itself and the laws of the States." *Hewitt v. Helms*, 459 U.S. 460, 466 (1983). In a prison setting, states may create protected liberty interests. These interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. *See Sandin*, 515 U.S. at 484 (internal citations omitted). Notably, neither Delaware law nor DCC regulations creates a liberty interest in a prisoner's classification within an institution. *See* 11 Del. C. § 6529(e). Moreover, "'[a]s long as the conditions or

degree of confinement to which [a] prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight.'" *Hewitt*, 459 U.S. at 468 (quoting *Montanye v. Haymes*, 427 U.S. 236, 242 (1976)).

10. It has, thus, been determined that the transfer of a prisoner from one classification is unprotected by "the Due Process Clause in and of itself," even though the change in status involves a significant modification in conditions of confinement. *Hewitt*, 459 U.S. at 468 (internal quotation marks omitted); *see also Lott v. Arroyo*, 785 F.Supp. 508, 509 (E.D. Pa. 1991) (plaintiff transferred from group home to correctional facility had no constitutionally enforceable right to participate in work release program); *Brown v. Cunningham*, 730 F.Supp. 612 (D. Del. 1990) (plaintiff's transfer from general population to administrative segregation, without being given notice and opportunity to challenge it, was not violation of plaintiff's liberty interest). Plaintiff complains that his current housing assignment deprives him of the ability to participate in certain programs. Even if true, the transfer did not violate Plaintiff's due process rights. Accordingly, the decision to place Plaintiff in isolation housing cannot be viewed as falling outside the scope of "the sentence imposed upon him [or] otherwise violative of the Constitution."

11. Plaintiff's proposed claims alleging that he has been denied rehabilitation, education, and employment fail as a matter of law. Plaintiff as an inmate has no constitutional right to participation in particular rehabilitation programs. *See Groppi v. Bosco*, 208 F. App'x 113, 115 (3d Cir. Dec. 12, 2006) (not published); *Abdul-Akbar v. Department of Corr.*, 910 F.Supp. 986, 1002 (D. Del. 1995). Nor does Plaintiff have a right to a specific job, or even to

any job. *See James v. Quinlan*, 866 F.2d 627, 630 (3d Cir. 1989). Finally, Plaintiff, as an inmate, has no constitutionally protected right to an education. *See Flanyak v. Ross*, 153 F. App'x 810, 812 (3d Cir. Oct. 13, 2005) (not published).

12. **Motion for injunctive relief for medical assistance.** Plaintiff's motion for injunctive relief is DENIED. (D.I. 92) Plaintiff's letter/motion for injunctive relief states that mental health personnel will no longer talk to him. The letter expresses suicidal ideation wherein Plaintiff states that he is depressed, wants to die, is sorry to be alive, and is tired of crying and wants to go to heaven. The Court ordered Defendants to respond to the Order and they submitted their response along with a current psychological summary.

13. "A preliminary injunction is an extraordinary remedy that should be granted only if: (1) the plaintiff is likely to succeed on the merits; (2) denial will result in irreparable harm to the plaintiff; (3) granting the injunction will not result in irreparable harm to the defendant; and (4) granting the injunction is in the public interest." *NutraSweet Co. v. Vit-Mar Enters., Inc.*, 176 F.3d 151, 153 (3d Cir. 1999). Because of the intractable problems of prison administration, a request for injunctive relief in the prison context must be viewed with considerable caution. *See Abraham v. Danberg*, 322 F. App'x 169, 170 (3d Cir. Apr. 24, 2009) (not published) (citing *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995)).

14. Following his letter to the Court, two psychologists attempted to interview Plaintiff on September 27, 2011, but Plaintiff did not want to speak to them. They observed that Plaintiff was oriented to all spheres, that he appeared frustrated and angry in mood and tone, but they did not detect unusual or bizarre behavior. The two psychologists then met with Plaintiff on September 29, 2011. He was oriented to all spheres, maintained adequate eye contact, and his

thought process was obsessive/preservative. Plaintiff spoke about the injustice of his conviction, and his mood was angry with an affect appropriate to mood. He denied suicidal ideation or plan but stated that, if the injustice imposed upon him was not remedied, he would want to end his life. The psychologists opined that Plaintiff did not appear to be an imminent threat to himself or others, but that he should be monitored regularly for any further deterioration in his mental status. (D.I. 103)

15. Plaintiff has not demonstrated the likelihood of success on the merits. He receives mental health treatment and his mental condition is monitored regularly. Notably, Defendants took immediate action upon learning that Plaintiff advised the Court of his suicidal ideation. There is no indication that, at the present time, Plaintiff is in danger of suffering irreparable harm. Nor has he demonstrated the likelihood of success on the merits or irreparable harm to justify the issuance of injunctive relief.

16. **Petition for Writ of Mandamus.** Plaintiff's Petition for Writ of Mandamus construed as a Motion for Injunctive Relief is DENIED. (D.I. 105) The Court notes that the Motion is a "fill-in-the blank" form. Plaintiff seeks relief from "oppressive action" by Phelps. Plaintiff asserts, in a conclusory manner and without supporting facts, that Phelps "runs a haphazard institution, allowing employees to operate autonomously and without regard for the law, the rules of the United States Supreme Court or the constitutional rights of the prisoners, or the public at large." For relief he seeks: (1) removal of restrictions placed upon his First Amendment right to correspond; (2) restoration of "thirty (30) days forfeited by the institution's disciplinary committee;" (3) delivery of all correspondence, legal material, and law books

without any form of delay or censorship; and (4) punitive damages and such other relief as warranted by the Court.

17.     Plaintiff has not demonstrated the likelihood of success on the merits. While Plaintiff seeks specific forms of relief, nothing in his Motion indicates a deprivation of constitutional rights. For example, there are no allegations that he has been denied the right to correspond, that he has been denied his right to access to the courts, or that an unlawful punishment resulted in the loss of good time credits. Nor do the allegations indicate that, at the present time, Plaintiff is in danger of suffering irreparable harm. The Motion is baseless.

_____
UNITED STATES DISTRICT JUDGE