IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JEFFREY KRAHN | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 10-140-LPS |
| | ) | |
| SCOTT MEIXELL and | ) | |
| CHRISTOPHER ALBENCE, | ) | |
| | ) | |
| Defendants. | ) | |

Alan R. Silverstein, POTTER, ANDERSON & CORROON, LLP, Wilmington, DE

Eric J. Evain, NOVAK DRUCE CONNOLLY BOVE + QUIGG LLP, Wilmington, DE

    Attorneys for Plaintiff

Michael F. McTaggart, Ophelia M. Waters, Deputy Attorneys General, Wilmington, DE

    Attorneys for State Defendants

**MEMORANDUM OPINION**

November 10, 2014
Wilmington, Delaware

{{signature}}

**STARK, U.S. District Judge:**

State Defendants Scott Meixell ("Meixell") and Christopher Albence ("Albence") (collectively, "Defendants") filed a motion for summary judgment. (D.I. 162) After full briefing, the Court heard oral argument on the motion during the pretrial conference on October 30, 2014. (*See* Transcript ("Tr.")) Given the imminence of trial, which was scheduled to begin on November 17, 2014, the Court advised the parties at the conclusion of the pretrial conference that it would advise them by Monday, November 3 as to whether trial would go forward as scheduled. On November 3, the Court issued an Order granting the summary judgment motion and cancelling trial, indicating that an opinion explaining the Court's reasoning would issue in due course. (D.I. 183) This is that opinion.

## BACKGROUND

### I. Procedural Background

This civil rights action was filed by Plaintiff, Jeffrey Krahn ("Plaintiff" or "Krahn"), an inmate at the James T. Vaughn Correctional Center ("VCC") in Smyrna, Delaware, on February 18, 2010. (D.I. 1) Krahn initially filed suit against the State of Delaware, pursuant to 42 U.S.C. § 1983. (*Id.*) On March 26, 2010, Plaintiff filed an Amended Complaint, adding as Defendants both Meixell and Albence – both of whom are former Delaware Probation and Parole Officers – as well as other individual defendants. (D.I. 7) Plaintiff alleged that on April 2, 2008, at a time when he was a supervised probationer, he was shot by Defendants, and thereafter Defendants and their colleagues conspired to retaliate against him. (*Id.*)

On June 25, 2010, the Court dismissed the State of Delaware from the suit based on immunity, pursuant to 28 U.S.C. § 1915(e)(2)(b) and § 1915A(b)(1). (D.I. 14; *see also* D.I. 13)

1

The Court further granted Plaintiff leave to amend his retaliation claim, which he did in a Second Amended Complaint filed on July 23, 2010. (D.I. 15) On September 30, 2010, the Court dismissed the Second Amended Complaint as frivolous, thereby dismissing all state defendants except for Meixell and Albence. (D.I. 18) Later, on October 14, 2011, the Court denied Plaintiff's request to amend his complaint to add a conspiracy claim against the previously-dismissed defendants. (D.I. 86; D.I. 106)

On February 28, 2012, Defendants Meixell and Albence filed their first motion for summary judgment. (D.I. 114) On September 7, 2012, the Court granted Plaintiff's request for assistance of counsel and denied without prejudice Defendants' summary judgment motion. (D.I. 127) On September 13, 2012, the Court appointed members of its Federal Civil Panel to represent Krahn. (D.I. 128)[1]

On May 16, 2014, Defendants filed their renewed motion for summary judgment. (D.I. 162)

## II. Factual Background

Given that the Court is reviewing Defendants' motion for summary judgment, the following recitation of the facts is based on the admissible evidence, taken in the light most favorable to Krahn, as well as the undisputed facts. Included in the record evidence are video recordings of a significant portion of the pertinent events as they unfolded, which were captured by two surveillance cameras. (D.I. 167; D.I. 172)

---

[1]The Court expresses its appreciation to Messrs. Silverstein and Evain for their diligent and effective representation of Mr. Krahn.

2

On the evening of April 2, 2008, Defendants were eating dinner at the Seasons Pizza Restaurant in New Castle, Delaware. (*See* D.I. 165 Ex. C at 2; D.I. 164 at A6, A38, A41-42, A90, A93-94, A101, A210, A212-14; *see also* D.I. 167 at 9:40-10:00; D.I. 172 at 7:55-9:23) Defendants were dressed in their uniforms. (*See* D.I. 164 at A90-94, A213-14)

At approximately 7:40 p.m., Krahn and his wife arrived at the restaurant and were seated in a booth adjacent to Defendants. (*See* D.I. 165 Ex. A at 4, Ex. C at 2; D.I. 164 at A6, A210, A212; *see also* D.I. 167 at 9:40-10:10) Albence, to whom Krahn had previously reported (D.I. 164 at A7, A39-40), recognized Krahn and told Meixell that the "last time [he] checked" Krahn was a wanted probation absconder (D.I. 164 at A38, A40-41, A210, A212, A214). Plaintiff, who had previously been convicted for possession of crack cocaine (D.I. 115 Ex. C at 2), knew that there was a warrant out for his arrest (*see* D.I. 164 at A16).

Although Krahn testified in his deposition that he never saw Albence sitting in the adjacent booth (D.I. 165 Ex. A at 4; D.I. 164 at A6), Krahn could have seen Meixell from his seat in the restaurant (*see* D.I. 164 at A38, A105, A214; D.I. 167 at 10:10-11:17). At 7:41:47 p.m., a waitress brought Krahn and his wife drinks. (D.I. 167 at 11:10-15) At 7:41:51, less than two minutes after Plaintiff had entered the restaurant, Plaintiff got up and walked out of the restaurant. (*See* D.I. 165 Ex. A at 4; D.I. 164 at A103; D.I. 167 at 11:17-26) By this time, Meixell had attempted to call for verification that there remained an outstanding warrant for Plaintiff's arrest, but he had not yet received any such confirmation. (*See* D.I. 164 at A38, A103, A109; *see also* D.I. 167 at 11:15-26)

By 7:41:59, Krahn had exited the restaurant and was no longer in view of the restaurant's indoor surveillance camera. (*See* D.I. 167 at 11:26; *see also* D.I. 165 Ex. C at 3) At 7:42:00,

3

Meixell stood up at his table, put his phone away, and put on his tactical vest. (*See* D.I. 167 at 11:22-41; *see also* D.I. 164 at A109, A113, A212) By 7:42:10, Krahn was approaching a maroon Honda truck, unlocking it remotely. (*See* D.I. 172 at 11:33-38; *see also* D.I. 164 at A6, A210, A214) Meixell cleared the interior door of the restaurant by 7:42:15. (*See* D.I. 167 at 11:37-42; *see also* D.I. 165 Ex. C at 3) Albence immediately followed, clearing the interior door by 7:42:17. (*See* D.I. 167 at 11:41-44; *see also* D.I. 165 Ex. C at 3; D.I. 164 at A42)

By 7:42:20, Krahn was in the driver's seat of the Honda truck, toward which Meixell was running while (he testified) ordering Plaintiff to get out of the vehicle. (*See* D.I. 172 at 11:43-44; *see also* D.I. 164 at A109, A114, A212, A214; D.I. 165 Ex. C at 3) Instead of getting out, at 7:42:21, Krahn started the vehicle, as Albence ran toward the back of it. (*See* D.I. 172 at 11:44-45; *see also* D.I. 165 Ex. A at 4-5; D.I. 164 at A6-7, A110; D.I. 165 Ex. C at 3)

At 7:42:24, Krahn began moving the vehicle, putting it in reverse and backing into Albence, and then starting to pull forward. (*See* D.I. 172 at 11:45-54; *see also* D.I. 165 Ex. C at 3; D.I. 164 at A38, A212, A214) Meixell, from the front of the truck, fired his gun at the driver's side front tire as Krahn backed the truck into Albence; Meixell then proceeded to fire at the driver's side front windshield. (*See* D.I. 165 Ex. C at 3; D.I. 164 at A122-28, A210) Albence, from the back of the truck, fired three shots after Plaintiff backed into him and started driving forward toward Meixell. (D.I. 165 Ex. C at 3; D.I. 164 at A38, A47-50, A126-28, A212, A214) As Krahn drove the truck toward him, Meixell jumped on top of the hood, in an effort to avoid getting run over. (*See* D.I. 165 Ex. C at 3; D.I. 164 at A127-27, A212, A214) Meixell rolled off the hood and lost consciousness, sustaining a severe laceration to his head, a level three concussion, and two fractured vertebrae. (D.I. 164 at A49, A128-29, A210, A212, A214)

4

Albence fired several more rounds, in an unsuccessful attempt to stop Krahn. (*Id.* at A49-50, A214; D.I. 165 Ex. C at 3) Later, Meixell, while lying injured on the ground, told a witness that he "fired first." (D.I. 165 Ex. F at DOC008082)

Krahn was grazed by some of the bullets and sustained injuries to his right leg and right bicep. (D.I. 164 at A8-9, A213; D.I. 165 Ex. A at 6-7) Yet Plaintiff got away from Meixell and Albence. Not until nearly a month later, on May 1, 2008, was Krahn arrested – in Las Vegas, Nevada. (D.I. 164 at A10, A213)

After being extradited to Delaware, on February 4, 2009 Krahn pled guilty in Delaware Superior Court to Assault in the First Degree against Meixell and to Reckless Endangerment in the First Degree against Albence. (D.I. 165 Ex. A at 13; D.I. 164 at A14-15, A230)

In his deposition, Krahn testified that the reason he went to his truck shortly after entering the restaurant was to get his money. He further testified that Defendants ran toward his truck with their guns drawn and without identifying themselves and began shooting at him before he had started the vehicle. Plaintiff stated that he feared he was being attacked by people to whom he owed money and thought his life was in jeopardy. (*See* D.I. 165 Ex. A at 4-5; D.I. 164 at A6-7)

## LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 415 U.S. 574, 586 n.10 (1986). A party asserting that a fact cannot be – or, alternatively, is – genuinely disputed

5

must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motions only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 415 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586-87; *see also Podohnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). However, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 411 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 411 U.S.

6

317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

**DISCUSSION**

A plaintiff who brings an action pursuant to 42 U.S.C. § 1983 may claim damages against an individual for violations of federal law carried out under color of state law. Here, there is no dispute that Defendants, who were on duty as Delaware Probation and Parole officers on the evening of April 2, 2008, were acting under color of state law. Thus, to survive Defendants' motion for summary judgment, Plaintiff needs to show that, on the record now before the Court, taken in the light most favorable to him, a reasonable jury could find one or both Defendants violated his constitutional rights.

Defendants assert three bases for summary judgment. The Court addresses them below.

**I.** *Heck* **Doctrine**

Defendants first contend that under *Heck v. Humphrey*, 512 U.S. 477 (1994), Plaintiff cannot claim that Defendants acted unreasonably, given his guilty plea to First Degree Assault of Meixell and First Degree Reckless Endangerment of Albence. (*See* D.I. 163 at 8-11; D.I. 164 at A230; D.I. 170 at 2-4; Tr. at 4-11) Pursuant to the "*Heck* doctrine," "when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction." *Heck*, 512 U.S. at 487. If it would, then the plaintiff is precluded from prevailing in his civil suit. *See id.* at 487-88; *see also Gilles v. Davis*, 427 F.3d 197, 209 (3d Cir. 2005) (explaining that § 1983 claim that "require[s] answering the same question" as underlying conviction in a way that "could result in a

7

conflicting resolution arising from the same conduct" may not be brought, unless underlying conviction has been terminated in plaintiff's favor).

Plaintiff responds that his convictions were based on his conduct only *after* Defendants had already improperly used excessive force against him. He argues that a reasonable juror could find that Defendants unnecessarily and improperly approached his vehicle with guns drawn and began shooting at him *before* he turned the truck on and began driving it at Defendants. (*See* D.I. 165 at 5-7; Tr. at 12-14) Plaintiff analogizes his situation to that confronted by the Third Circuit in *Nelson v. Jashurek*, 109 F.3d 142, 145 (3d Cir. 1997), in which that Court held that a plaintiff's excessive force claim would not have necessarily implied the invalidity of the plaintiff's conviction for resisting arrest because the excessive force took place *after* plaintiff's arrest.

Although much of the parties' briefing and argument was devoted to the *Heck* doctrine, the Court concludes that, given the presence of at least two other bases on which Defendants must be granted summary judgment, it is unnecessary to determine if summary judgment is warranted under *Heck*.

## II. Substantive Due Process

Krahn contends that Meixell and Albence used unconstitutionally excessive force against him. Initially, Krahn's argument appeared to be that Defendants' actions violated his rights protected under the Fourth and Fourteenth Amendments. (*See* D.I. 1 at 1) In connection with briefing on the pending motion for summary judgment, however, Krahn's theory narrowed, and he now presses his claim only under the Fourteenth Amendment, and specifically alleges a

8

violation of his right to substantive due process. (*See* 165 at 1, 7; Tr. at 15)[2] Plaintiff asserts that Defendants used excessive force by firing their weapons before he turned on his vehicle, without having (i) identified themselves, (ii) confirmed that he was subject to an outstanding warrant, (iii) seeking backup for assistance with apprehending Plaintiff, or (iv) ensuring that the restaurant parking lot was clear of bystanders. (D.I. 165 at 8)

Generally, executive action violates substantive due process under the Fourteenth Amendment only when such action "can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." *Lewis*, 523 U.S. at 847 (internal quotation marks omitted). With respect to action by government officers who did not have the time to engage in practical deliberation, "a much higher standard of fault than deliberate indifference has to be shown" before liability may be imposed. *Id.* at 852. The Supreme Court has compared this standard to the one applied in connection with "cruel and unusual punishment" claims by prisoners under the Eighth Amendment, in which "liability should turn on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id.* at 853 (internal quotation marks omitted). Thus, "when unforeseen circumstances demand an officer's instant judgment, even precipitate recklessness fails to inch close enough to harmful purpose to spark the shock" that gives rise liability under the Fourteenth Amendment. *Id.* at 853. In particular, the Supreme Court has held that "high-speed chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment" that may be redressed by an action under § 1983. *Id.* at 854.

---

[2]Krahn has conceded that, particularly given his successful escape from Defendants on April 2, 2008, he was not "seized" for purposes of the Fourth Amendment under *County of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998). (*See* D.I. 165 at 7)

9

Krahn cannot meet these high burdens. Taking the record evidence in the light most favorable to Krahn, a reasonable juror could find that Meixell and Albence approached the truck with guns drawn, without identifying themselves as Probation and Parole Officers, without giving Krahn warning, without having confirmed that an arrest warrant for him remained outstanding, and that Meixell began firing shots at Krahn's truck a second or so before Krahn turned it on.[3] Even so (and this is of course not the only set of findings a reasonable juror could make), given the unforseen circumstances (e.g., an at-least recently wanted probation violator being seated at a restaurant booth right next to Probation and Parole Officers, including an officer who had previously supervised him), Krahn's suspicious behavior of leaving the restaurant within two minutes of arriving and getting into his vehicle and appearing to be in the process of starting it, and the lack of any evidence that either Defendant acted maliciously or sadistically or for any reason other than a good-faith attempt to apprehend Krahn, a reasonable jury could not find that Defendants' conduct shocks the conscience. Even if Defendants' actions could be found to be reckless, this finding would not be sufficient to support a conclusion that Defendants violated Plaintiff's substantive due process rights.

Accordingly, Meixell and Albence are entitled to summary judgment on Krahn's substantive due process claim.

### III.   Qualified Immunity

---

[3] Although neither side has parsed the record separately with respect to Meixell and Albence, the case against Albence is even weaker than it is against Meixell, as the outside surveillance video shows that Albence did not fire his gun until after Plaintiff turned on the truck and started to back into him. (D.I. 11:43-54) *See Scott v. Harris*, 550 U.S. 372, 380 (2007) (rejecting, on summary judgment, plaintiff's version of events that was contradicted by video recording of police chase); *Nifas v. Coleman*, 528 Fed. Appx. 132, 135 (3d Circ. 2013) (same based on prison video recording).

10

Defendants argue that even if a reasonable jury could find that Defendants' actions violated Plaintiff's constitutional rights, Defendants still would not be liable because they are entitled to qualified immunity. (*See* D.I. 163 at 17-19; D.I. 170 at 8-10) "Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Brosseau v. Haugen*, 542 U.S. 194, 198 (2004). "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Anderson v. Creighton et al.*, 483 U.S. 635, 639 (1987) (internal quotation marks and citation omitted). Importantly, "qualified immunity exists, in part, to protect police officers in situations where they are forced to make difficult, split-second decisions." *Reedy v. Evanson*, 615 F.3d 197, 224 n.37 (3d Cir. 2010). Recently, the Supreme Court has added that "[q]ualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*, 134 S. Ct. 3, 5 (2013) (internal quotation marks omitted).

Plaintiff has identified no clearly-established law that Defendants violated when, in unexpected circumstances that in total lasted less than five minutes, they used deadly force in an attempt to apprehend him and prevent his escape, as Plaintiff himself used deadly force in the form of a moving vehicle. On the record here, no reasonable juror could find that Meixell and Albence knowingly violated the law or were "plainly incompetent."

This same conclusion follows even if Plaintiff were continuing to press his claim under the Fourth Amendment (which he is not). Pursuant to the Fourth Amendment, deadly force "may

11

not be used unless it is necessary to prevent the escape and the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." *Tennessee v. Garner*, 471 U.S. 1, 3 (1985). The inquiry may be framed as: "Giving due regard to the pressures faced by the police, was it objectively reasonable for the officer to believe, in light of the totality of the circumstances, that deadly force was necessary to prevent the suspect's escape, and that the suspect posed a significant threat of death or serious physical injury to the officer or others?" *Abraham v. Raso*, 183 F.3d 279, 289 (3d Cir. 1999). The Fourth Amendment inquiry should be undertaken with respect to "all of the relevant facts and circumstances leading up to the time that the officers allegedly used excessive force," rather than "freez[ing] the time frame and considering only the facts and circumstances at the precise moment that excessive force is applied." *Rivas v. City of Passaic*, 365 F.3d 181, 198 (3d Cir. 2004).

Here, considering all of the relevant facts and circumstances leading up to the time Meixell and Albence allegedly used excessive force, Defendants' conduct was objectively reasonable. As they exited the restaurant to pursue Krahn – a wanted probation violator, who had himself left the restaurant barely two minutes after entering it and being seated in a booth next to two probation officers, one of whom had previously supervised him – it was objectively reasonable for Defendants to prepare themselves to use deadly force to prevent Plaintiff's escape, and to protect themselves and any bystanders from the threat of death or serious injury Plaintiff might pose were he to (as he did) turn on his vehicle and begin to operate it in a manner intended to kill or seriously injure others. This analysis is unaffected even if a reasonable jury were to credit Krahn's testimony that he left the restaurant to get his money, never knew or was warned

12

that Defendants were probation officers,[4] and he feared for his life thinking he was being attacked by individuals to whom he owed a debt.

Accordingly, Defendants are protected from liability due to qualified immunity. Again, they are entitled to summary judgment.

## CONCLUSION

For the foregoing reasons, the Court has granted Defendants' Meixell and Albence's motion for summary judgment. An order to this effect was entered on November 3, 2014. The Clerk of Court is directed to enter judgment in favor of Defendants and against Plaintiff and to close this case.

---

[4]While there appears to be a genuine factual dispute as to whether Plaintiff was given verbal warnings that Defendants were Probation and Parole officers (*compare* D.I. 164 at A6-7 *and* D.I. 165 Ex. D at 17 *with* D.I. 164 at A116, A118, A214 *and* D.I. 165 Ex. C at 3), it is undisputed that Defendants were wearing uniforms and badges (*see* D.I. 164 at A42, A93-94, A214).